(99 South. 198)

**STATE et al. v. BURCHFIELD BROS.**
(6 Div. 929.)

(Supreme Court of Alabama. Feb. 7, 1924.)

**1. Taxation ⟜74—Money withdrawn by partners in wholesale grocery business as dividends which are not paid back to partnership held not "capital actually employed" in business; "net worth."**

Under Gen. Acts 1919, p. 283, § 2 (a) declaring all solvent credits exempt from ad valorem taxation, and section 5, subsec. (d), requiring that stocks of goods be assessed on the average amount on hand during the preceding year, but that the amount so assessed shall not be less than the "capital actually employed" in the business, a sum of money, drawn out by partners in a wholesale grocery business representing dividends or salaries which was not paid back to the firm, held not "capital actually employed" in that business within section 5; the words "capital actually employed" not being the equivalent of the words "net worth of the business," but applying to all of the properties and monies set apart from other uses and invested or employed in the operation of the business with a view to income or profit therefrom, and as applied to complainants' wholesale business mean the properties, moneys, choses in action that were actually employed in the business, and their solvent credits, if the same were also actually employed in the business, and under section 5, subsec. (d) as so construed, a merchant is not taxed on his solvent credits as such, and thereby on the "net earnings" of the business, but only when he makes such choses in action and solvent credits do service in the business as a part of his "capital actually employed" in its operation within the tax year.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital.]

**2. Statutes ⟜207—Statutory rule of construction when two provisions of statute conflict stated.**

If two provisions of a tax statute conflict, the legislative intent must be found, if possible, from the whole act, considering its history, nature, purpose, etc., having in mind that such statutes are construed in favor of the taxpayer,

and, if the conflict is irreconcilable and not to be determined by other rules that obtain, the statutory rule as to the last legislative expression may be resorted to.

**3. Taxation ⟜40(8)—Statutes held not to violate constitutional provisions as to uniformity, rate of taxation, and valuation of property.**

In Gen. Acts 1919, p. 284, § 5, subsec. (d), requiring that stocks of goods be assessed on the average amount on hand during the preceding year, but that the "amount so assessed shall not be less than the capital actually employed in the business," the quoted words, when construed in their generally accepted meaning, held within the legislative authority and within rules for taxation in proportion to value (Const. 1901, § 211) and as to uniformity (section 217) and also within the limits of the tax rate fixed by section 214.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Appeal to the circuit court by the State of Alabama and Tuscaloosa county from the assessment for taxation by the board of revenue of the property of Burchfield Bros., a partnership. From the judgment, the state and county appeal. Affirmed.

The case was tried upon an agreed statement of facts, in substance as follows:

Burchfield Bros. began business in 1904, with a total cash contribution of $15,000, and no other property. The average stock of merchandise carried by the partnership during the preceding tax year was approximately $119,000. The personal property other than merchandise, as shown by the books on or about December 31, 1919, was approximately $7,735; real estate situated in Tuscaloosa county, approximately $14,181; real estate outside Tuscaloosa county, approximately $1,035; accounts, notes, and bills receivable, approximately $256,593.90. This latter amount represents what the partnership claims to be the solvent credits, some of which is evidenced by notes and mortgages appearing on record; "and also this amount less the debts due by Burchfield Bros. leave the amount claimed by the state tax commission to be the capital employed in the business."

The accounts payable and overdrafts of the partnership as shown by the books on or about December 31, 1919, amount to approximately $67,779.27.

On a 100 per cent. basis, the total assets, including real property, personal property and solvent credits or capital employed in the business, amount to the total sum of $398,844.90. Deducting accounts payable and overdrafts of $67,779.27, the net worth of the partnership is $331,065.63.

By agreement with the tax adjuster of Tuscaloosa county, all assessments of all property of the partnership in the county for

the year 1920, on a 60 per cent. basis, was as follows:

| | |
|---|---:|
| Real estate | $ 8,500 00 |
| Stock of merchandise | 75,000 00 |
| Automobile equipment | 3,900 00 |
| Furniture & fixtures | 740 00 |
| Capital employed | 00 |
| | $88,140 00 |

The state tax commission set aside this agreement, and added to the assessment $110,000 as "capital employed in the business." Thereafter the partnership appealed from the assessment by the state tax commission to the board of revenue. On hearing the board of revenue fixed the assessment at the amount agreed upon by the tax adjuster and the partnership, $88,140; and from this assessment the state appealed to the circuit court.

It is further agreed that Burchfield Bros. would testify as follows:

"That in a wholesale grocery business the stock of merchandise is turned over about every 30 days. The cash employed in a wholesale grocery business does not exceed the sum of one-twelfth of the total costs of the goods or merchandise purchased during one year. The goods purchased during the preceding year in their business was approximately the sum of $1,273,000. The accounts of Burchfield Bros. receivable contain the account of J. P. Burchfield for the sum of $56,500, and the account of J. M. Burchfield for the sum of $44,500; that these accounts charged respectively to J. P. Burchfield and J. M. Burchfield represent the dividends or salaries that the said J. P. Burchfield and J. M. Burchfield have drawn out during the course of their business, and were not to be paid back to the firm and as a matter of fact at this time and since this suit was started have been charged off. Part of these accounts were for salaries, and the remainder was put in individual investments of said J. P. Burchfield and J. M. Burchfield."

It was also agreed what S. Sutliff, a representative of the state, would testify, which is in part as follows:

"This partnership's physical property amounting to a small proportion of its capital employed in the business, the firm should be taxed also on capital employed. After making the allowance of 10 per cent. on accounts receivable, as recommended by me, the assets would remain $399,277.85; the accounts payable and cash overdraft totaling $67,779.27, there remains $331,498.58 as the net worth or capital employed. All figures above on 100 per cent. basis.

"1920 assessment amounts to $88,140 in Tuscaloosa county. Assuming that real estate in other counties was given in at 60 per cent. of its book value * * * it would be $618, making a total assessment of real and personal property in Alabama of $88,758. This amount is, of course, on 60 per cent. basis.

"The net worth on 100 per cent. basis being $331,498.58, and on 60 per cent. basis being approximately $198,900, and the total assessment of real and personal property on 60 per cent. basis being $88,758, there is left a residue of $110,000 approximately, which should be as-sessed as capital employed in business, in addition to the assessment of real and personal property."

The circuit court by its judgment fixed the assessment at $88,140 for the year 1920, and from that judgment the state and county prosecute this appeal.

Harwell G. Davis, Atty. Gen., and O. B. Cornelius, Asst. Atty. Gen., for appellants.

Solvent credits are exempt from taxation; yet, in arriving at the amount of capital actually employed in business, the value of the solvent credits must, in effect, be assessed to the extent necessary to supply the difference, if any, between the value of the average stock of goods, wares and merchandise on hand during the preceding year and the capital actually employed in the business. State v. Seals Piano Co., 209 Ala. 93, 95 South. 451.

Brown & Ward, of Tuscaloosa, and Rushton, Crenshaw & Rushton, of Montgomery, for appellee.

There is no tax imposed by law upon either solvent credits or capital employed in business. Acts 1919, p. 282, § 2 (a); Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197; Perry County v. Railroad Co., 58 Ala. 546; Calhoun Co. v. Woodstock Iron Co., 82 Ala. 157, 2 South. 132; State v. Board of Rev., 73 Ala. 65; Vines v. State, 67 Ala. 73; McLendon v. State, 179 Ala. 61, 60 South. 392, Ann. Cas. 1915C, 691.

THOMAS, J. The appeal is by the state. The question pertains to the collection of the state's revenues. The trial was before the court, without a jury. The facts on which the case was tried were agreed upon by counsel.

In Ex parte State, 206 Ala. 575, 90 South. 896, the respective taxable interests in personal property in which the vendor retains a conditional title were declared. Acts 1919, p. 283, § 2.

In State v. Seals Piano Co., 209 Ala. 93, 95 South. 451, it is declared that—

"When the title to some substantial interest in property is vested in one person, and the general title in another, the interests are taxable separately. Ashe-Carson Co. v. State, 138 Ala. 108, 35 South. 38. The act is entirely clear to the effect that no stock of goods, wares, and merchandise is to be assessed for taxation at less than the capital actually employed in the business. * * * We do not understand that the amount of capital assessed to appellee included anticipated profits."

And capital actually employed in that business—the business of such conditional sales contracts—is there defined to be "that part of the assets of the company, including profits already earned (if reinvested), which, at the period of assessment, is used by it in the

conduct of its business for the purpose of deriving profit therefrom," and it was held that "the company's interest in outstanding lease-sale contracts at the time of the assessment under review was capital within the purview of section 5, supra." This element of taxable property not exempt was differentiated from solvent credits as such that were exempt by the statute as follows:

"Being at once solvent credit and capital actually employed in business, it appears from the plain language of the revenue act that, while not in general taxable as solvent credit, in the particular circumstances indicated by subsection (d) of section 5 the value of such outstanding interest must be assessed for taxation, in effect, to the extent necessary to supply the difference, if any, between the value of the average stock of goods, wares, and merchandise on hand during the preceding year and the capital actually employed in the business."

The pertinent provisions of the statute, subsection (d) section 5, General Acts 1919 page 285, are as follows:

"*All stocks of goods, wares and merchandise,* the assessment to be on the average amount on hand during the preceding year, but the *amount so assessed shall in no case be less than the capital actually employed in the business,* and this shall include all goods, wares and merchandise kept on plantations or elsewhere, or by railroad companies or manufacturing companies, or other associations, companies or persons, *for sale or to be dealt out to laborers or employees for profit,* or on *account of their wages,* and shall include all *goods, wares and merchandise offered for sale* by any person commencing business subsequently to the first day of October of a current year, but in such case the tax shall be apportioned according to the date at which the business was commenced, so that if commenced after the first day of January, the tax shall be three-fourths of the tax for the whole year; if commenced after the first day of April the tax shall be one-half of the tax for the whole year; provided that the assessment herein provided for shall not include products raised on the farms in the hands of the original producers. If the person, association or corporation carrying on such business shall fail to make return of' the *amount of stock* as provided by law, or if the county tax assessor is not satisfied with the return made, in order to make proper assessment, he shall have the right to demand a copy of the last inventory made of *such stock of goods,* and may also by inquiry of persons believed to have knowledge of the subjects, obtain information *as to the probable average amount of such stock,* and from such information may assess the same upon his best judgment." (Italics supplied.)

Section 2, of the act supra, among other things, exempts:

"All bonds of the United States and of this state, * * * *all mortgages, together with the notes, debts and credits secured thereby on real and personal property situated in this State* which mortgages have been filed for record and the privilege tax paid thereon; *all money on deposit in any bank or banking institution in this State and all solvent credits.*" (Italics supplied.)

[1, 2] The quære may be made, under this tax statute (that is, strictly construed against the taxing power, State v. Roden Coal Co., 197 Ala. 407, 73 South. 5.): Are the words "capital actually employed in the business" the equivalent of the words "net worth of the business," if effect be given to the plain intent of the statute when considered as a whole? State v. Seals Piano Co., 209 Ala. 93, 95 South. 451; Sunflower Lbr. Co. v. Turner Supply Co., 158 Ala. 191, 48 South. 510, 132 Am. St. Rep. 20; Mutual Life Ins. Co. v. Allen, 166 Ala. 159, 51 South. 877. They are not.

These words ("capital actually employed") were used in subsection (d), section 5, of the statute, supra, in their natural and ordinary signification and in the generally accepted sense. They have application to all of the properties and moneys set apart from other uses and invested or employed in the operation of the business with a view to income or profit therefrom. Bailey v. Clark, 21 Wall. (88 U. S.) 284, 22 L. Ed. 651; Terre Haute & I. R. Co. v. State, 159 Ind. 438, 65 N. E. 401, 404, 408. It follows that the respective withdrawals from the business by the two Burchfields, aggregating the sum of $101,000, are held not to be capital actually employed in said business within the statute construed.

In one of the briefs of appellees' counsel is the admission that under the Seals Piano Co. Case, supra, solvent credits (though generally exempt from taxation) "can be taxed to some extent, provided the cash actually employed in the business of a concern is in excess of the average amount of stock on hand in such business." They, however, ask a reconsideration of the decision rendered in the Seals Piano Co. Case, to the end, as they say, that "full force and effect" be given to "all of the provisions and subsections of the revenue act of 1919," under the maxim ut res magis valeat quam pereat—that the thing may rather have effect than be destroyed. Simonds v. Walker, 100 Mass. 113; National P. Bank v. Lougee, 108 Mass. 373, 11 Am. Rep. 367. It is a rule of statutory construction that if two provisions of a statute are in conflict—inconsistent and irreconcilable—the legislative intent must be found, if possible, from the whole act, considering its history, nature, purpose, etc., and having in mind that such statutes are construed in favor of the taxpayer. Sutherland's Stat. Const. §§ 364, 441. If the conflict is irreconcilable and not to be determined by other rules that obtain, the statutory rule—as to the last legislative expression—may be resorted to. 6 Ann. Cas. 860; 19 Ann. Cas. 149; 25 R. C. L. 1011. Though, this rule is not often resorted to, since the conflict is

usually determinable by other rules that have application.

We have declared, in State v. Seals Piano Co., supra, as to the two provisions of the statute before us, that the maxim generalibus specialia derogant obtained, as to the facts before the court, and as to the provisions of subsection (d) of section 5 of the Revenue Act. In that case the special or unusual character of the business of selling musical instruments on contracts retaining title thereto was the subject of consideration, and the relation of such properties so contracted for sale as a part of the "stock in trade" and the capital actually engaged in the conduct of that business. See Singer Mfg. Co. v. County Com. of Essex County, 139 Mass. 266, 1 N. E. 419.

Under the facts before us, as to the conduct of the business by the Burchfields, there is a field of operation for the exemption of "all solvent credits" (section 2[a], Gen. Acts, 1919, p. 283), and the taxation of all "goods, wares and merchandise," and the assessment thereof "to be on the average amount on hand during the preceding year, but the amount so assessed *shall in no case be less than the capital actually employed in the business.*" Section 5, subsec. (d). (Italics supplied.) The latter was for the information of the taxing authorities of the county and state as to the "probable average amount of such stock," that a final "proper assessment" might be made by the exercise of the "best judgment" of the official charged by law with this duty. As having application to such a business as that conducted during the year in question by appellees, the words "capital actually employed" mean the properties, moneys, and choses in action that were actually employed in the business, and their solvent credits, if the same were also actually employed in the business. Under such construction the merchant is not taxed indirectly on his solvent credits as such, and thereby on the "net earnings" of the business, but only when such merchant makes such choses in action and solvent credits do service in the business as a part of its "capital actually employed" in its operation within the tax year.

[3] The argument is made by appellees' counsel that said provision of the statute—"but the amount so assessed shall in no case be less than the capital actually employed in the business"—is within the condemnation given statement in Board of Assessment v. Alabama Co., 59 Ala. 551, 556. That is to say, that the instant provision of the statute does more than provide a uniform rule of taxation (Const. § 217) in exact proportion to the value of such property (Const. § 211) within the rate fixed by the Constitution (§ 214) for ascertaining the value of the property of the class sought to be made the subject of taxation. In that case it is said:

"The statute under consideration passes beyond providing a mere rule for ascertaining the value of the property of railroad companies. The value of such property can in no event be assessed at less than a sum which, at 8 per cent. per annum, would produce its annual net earnings. If its net earnings, ascertained in the mode prescribed, will not produce a sum at 8 per cent. per annum, equal to the value of the road as otherwise shown, then the assessment of taxes must be on such value. In the one case, the income of the property furnishes a conclusive standard of value; in the other it is wholly discarded. The Legislature has not power to declare the value of property, and then assess taxes upon it as of that value; nor has it the power to assume and declare that the net income or earnings of property is an unerring test of its value. The value of the property, considering the uses for which it is employed, and the profit which may be derived from it, may be ascertained under rules which the Legislature may prescribe. The value must be ascertained, and taxes assessed upon it. It is not competent for the Legislature to declare that any species of property is of a particular value, because of its income, or to declare that the income alone shall be considered in determining its value. If the rule prescribed for the assessment of taxes on the property of railroads was applied to the assessment of the property of individuals, the violation of the Constitution would not be doubted. Two planters own adjoining plantations of equal fertility, and of equal value in all respects; the one, by his skill, industry, economy, and prudence, derives a net income, which, if regarded as 8 per cent. per annum on the value of his plantation, would produce a sum exceeding its actual value; in the market it would not command such value; an artificial value would thus, by legislative enactment, be imparted to his plantation, and his thrift and industry be converted into a subject of taxation. The other could be taxed on the value of his plantation, though, from the want of skill or thrift, so far from deriving an income, he had in its cultivation been involved in debt. We cannot read the Constitution without a conviction that its purpose is to free property from all arbitrary and artificial taxation—to limit the Legislature to a specified rate of taxation on its value. The limitation would be in vain, if the Legislature could prescribe a standard of value.

" * * * * We are bound to declare the Constitution does not authorize the Legislature to prescribe or declare an arbitrary or artificial value of the property of individuals or corporations, and assess taxes on such valuation. This is attempted by the statute prescribing the rule by which the board of assessment was governed. The assessment is consequently invalid—an excess of authority by the board."

If the principle announced in this last case be applied to the instant provision of the statute, the latter offends no organic law, if its words, "but the amount so assessed shall in no case be less than the capital employed in the business," are given the ordinary meaning we have indicated. When they are understood to have been so employed in the

211 ALA.—3

statute, they are within legislative authority in the prescription of rules for obtaining the tax valuation of the character of property being dealt with, and this is done with uniformity and within the limits of the Constitution tax rate.

It may be further observed that the other counsel for appellees concedes that the conclusion reached in State v. Seals Piano Co., 209 Ala. 93, 95 South. 451, that goods sold, but title retained, were still taxable as a part of the stock of goods on hand was correct, "but some of the reasons given unnecessary to support the holding, and are entirely at variance with State v. Alabama, etc., Co.," supra. To this last statement, as the statute is construed and must be applied to the facts of the case before us, we have indicated our disagreement.

No arbitrary or artificial value of property is applied by the trial court under the statute, and the judgment is affirmed.

On complainants' evidence it was found as a matter of fact that the "capital actually employed" in appellees' business for the tax year in question was equal to or not in excess of the "average amount" of such stocks, goods, wares, and merchandise, "on hand during the preceding" tax year.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.