COPY



# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 18, 1951

Hon. Homer Garrison, Jr., Director
Texas Department of Public Safety
Camp Mabry
Austin, Texas                    Opinion No. V-1285

Re: Interpretation of Senate Bill
57, Acts 52nd Leg., R.S.
1951, relating to the gross
weight of commercial ve-
hicles.

Dear Sir:

Your request for an opinion reads in part as follows:

"Senate Bill 57, Acts 52nd Legislature, Regular
Session, 1951, relating to the gross weight of commer-
cial motor vehicles provides that no axle shall carry a
load in excess of 18,000 pounds. The Act defines an axle
load as 'the total load transmitted to the road by all
wheels whose centers may be included between two par-
allel transverse vertical planes forty inches apart, ex-
tending across the full width of the vehicle.' The Act
then provides a table limiting the maximum load in
pounds carried on any group of axles and this table is
based upon the distance in feet between the extremes
of any group of axles.

"It is further provided in the Act that the total
gross weight concentrated on the highway surface from
any tandem axle group shall not exceed 32,000 pounds
for each such tandem axle group and then proceeds to
define a tandem axle group to be 'two or more axles
spaced forty inches or more apart from center to cen-
ter having at least one common point of weight suspen-
sion.'

"In connection with the above Act we desire your
opinion on the following questions:

"1.  Under Senate Bill 57, what would be the maximum gross weight allowed a combination of vehicles consisting of a single driving axle truck-tractor and tandem axle semi-trailer wherein it is thirty-seven feet from the front truck axle (Axle "A") to the extreme axle (Axle "D") of the tandem axle group (Axles "C" and "D"), and is twenty feet from the rear truck-tractor driving axle (Axle "B") to the extreme axle of the tandem axle group (Axle "D").  The axles of the tandem axle group (Axles "C" and "D") on the trailer are spaced four feet apart.

"2.  What is the legal maximum weight allowance for semi-trailer axles spaced four feet apart with no common point of weight suspension.

"3.  What is the maximum legal gross weight allowed under Senate Bill 57 for a tandem truck used to transport ready mixed cement wherein the distance in feet between the extreme axles is twelve feet.

"4.  What is the legal maximum gross weight allowed under Senate Bill 57 on a group of axles formed on a truck-tractor by the use of a 'jeep assembly.'"

Article 827a, Section 5, Vernon's Penal Code, as amended by Senate Bill 57, Acts 52nd Leg., 1951, ch. 146, p. 248, provides in part as follows:

"Section 5.  Except as otherwise provided by law, no commercial motor vehicle, truck-tractor, trailer or semi-trailer, nor combination of such vehicles, shall be operated over, on, or upon the public highways outside the limits of an incorporated city or town, where the total weight on a single axle or any group of axles exceeds the weight limitations adopted April 1, 1946, by the "American Association of State Highway Officials," set forth below in subsections (a) and (b):

"(a)  Permissible Loads -- No axle shall carry a load in excess of eighteen thousand (18,000) pounds.

"  . . .

"(b)  No group of axles shall carry a load in pounds in excess of the value given in the following table corres-

ponding to the distance in feet between the extreme axles of the group, measured longitudinally to the nearest foot:

| "Distance in feet between the extremes of any group of axles | Maximum load in pounds carried on any group of axles |
|---|---|
| 4 | 32,000 |
| 5 | 32,000 |
| 6 | 32,000 |
| 7 | 32,000 |
| 8 | 32,610 |
| 9 | 33,580 |
| 10 | 34,550 |
| 11 | 35,510 |
| 12 | 36,470 |
| 13 | 37,420 |
| 14 | 38,360 |
| 15 | 39,300 |
| 16 | 40,230 |
| 17 | 41,160 |
| 18 | 42,080 |
| 19 | 42,990 |
| 20 | 43,900 |
| 21 | 44,800 |
| 22 | 45,700 |
| 23 | 46,590 |
| 24 | 47,470 |
| 25 | 48,350 |
| 26 | 49,220 |
| 27 | 50,090 |
| 28 | 50,950 |
| 29 | 51,800 |
| 30 | 52,650 |
| 31 | 53,490 |
| 32 | 54,330 |
| 33 | 55,160 |
| 34 | 55,980 |
| 35 | 56,800 |
| 36 | 57,610 |
| 37 | 58,420 |
| 38 | 58,420 |
| 39 | 58,420 |
| 40 | 58,420 |
| 41 | 58,420 |

"The weights set forth in column two of the above table shall constitute the maximum permissible gross weight for any such vehicle or combination of such vehicles."

The act does not define "group of axles" or "axles of the group." We must therefore first ascertain what constitutes the "group of axles" to be used in determining the maximum gross weight allowed for any motor vehicle or combination of vehicles traversing the highways of this State outside the corporate limits of any incorporated city or town.

In order that our discussion of the question may be more clearly understood, we have reproduced below a photograph of the combination of motor vehicles accompanying the request.



It is contended by some interested parties that by the use of the language "no group of axles shall carry a load in excess of the value given in the . . . table corresponding to the distance in feet between the extreme axles of the group" the Legislature intended in the above example to group the axles as follows:  "A" to

"B", "A" to "D", "B" to "D", and "C" to "D". Thus, it is said that the weights given in the table for the corresponding distances in feet between each of these axle groups is the maximum gross weight permissible on any such axle group. In other words, applying the distances given above to the table, the total gross weight permissible on the axle group "B" to "D" would be 43,900 pounds, and on the axle group "A" to "D" it would be 58,420 pounds. Under this theory, an operator of a motor vehicle or combination of motor vehicles would be in violation of the gross load limit if the gross weight on any one group of axles was in excess of that shown by the table.

There is authority for this contention. The Supreme Court of Iowa in the recent case of State v. Balsley, 48 N.W.2d 287 (Iowa Sup. June 5, 1951) held under the Iowa act[1] providing for "distance in feet between the extremes of any group of axles or the extreme axles of the vehicle or combination" that axles "B", "C", and "D" together constitute a group of axles and that "consideration can and must be given to the distance between the extreme axles of this particular group and the weight that was on them." The Attorney General of Nebraska reached a like result in an opinion dated May 13, 1949.[2]

On the other hand, the Attorney General of Wyoming, construing a statute similar to those in Iowa and Nebraska,[3] in an opinion dated July 22, 1950, concluded that the meaning intended by the Legislature in using the terms "axles of the group" and "group of axles" was that "all axles under a vehicle should be considered as a group." It was further said that the distance to be measured in

---

1/ The Iowa act, Sec. 321.463, Iowa Code (1950), provides: "No group of axles of any vehicle, or any combination of vehicles, shall carry a load in pounds in excess of the value given in the . . . table corresponding to the distance in feet between the extreme axles of the group measured longitudinally to the nearest foot."

2/ The Nebraska act, Section 39-722, Neb. Rev. Stat. (Supp. 1949), provides: "No group of axles shall carry a load in pounds in excess of the maximum loads given in the . . . table corresponding to the distance in feet between the extreme axles of the group, measured longitudinally to the nearest foot."

3/ The Wyoming act, Ch. 87, Wyo. Laws, 1949, provides " . . . no vehicle or combination of vehicles shall be operated on the highways where the total gross weight, with load, exceeds that given by the . . . table, corresponding to the distance in feet between the extreme axles of the group measured longitudinally to the nearest foot."

order properly to apply the table or formula[4] was "the distance from the extreme front axle of the vehicle to the extreme rear axle of the vehicle without regard to the number of axles that might intervene between such front and rear axle."

Thus, there has been a division of opinion as to the construction to be placed upon the term "group of axles" even though the statutes construed are similar, each being modeled in part on the uniform act suggested by the American Association of State Highway Officials, as is Senate Bill 57. However, in determining the construction to be placed upon the Texas act it is necessary to consider one very important difference between Senate Bill 57 and the statutes of the other States. Immediately following the statutory weight formula it is provided:

"The weights set forth in column two of the above table shall constitute the maximum permissible gross weight for any such vehicle or combination of such vehicles."[5] (Emphasis added throughout.)

The above provision must be construed in connection with that portion of the act immediately preceding the statutory weight formula wherein it is provided:

"No group of axles shall carry a load in pounds in excess of the value given in the following table corresponding to the distance in feet between the extreme axles of the group, measured longitudinally to the nearest foot."

It is thus to be observed that this portion of the act deals with a "load in pounds" in relation to a "group of axles," while that portion of the act immediately following the weight formula designates the weights set forth in the table as the "maximum . . . gross weight" for the "vehicle or combination of . . . vehicles." Unless the second provision is explanatory of the meaning which the Legislature intended to attach to the first provision, the two provisions

---

4/  The statutory tables of distances and weights in Iowa, Nebraska, Wyoming, and Texas are the same.
5/  This provision is neither included in the uniform act suggested by the American Association of State Highway Officials nor the acts of the several States whose acts have been modeled after the suggested uniform act.

prescribe conflicting methods for determining maximum permissible gross load. In keeping with the rule of statutory construction that all parts of a statute will be harmonized, if possible, so as to give effect to every provision in the act, we think it is obvious that the Legislature, by the insertion of the provision relating to the maximum gross weight for a vehicle or combination of vehicles, intended that all axles under a vehicle or combination of vehicles be considered as the "group" without regard to intervening axles. Otherwise, we must attribute to the Legislature the doing of a meaningless and useless thing in expressly providing in the act that the weights given in the table should constitute the maximum permissible gross weight for a vehicle. This we should not do. Southwestern Gas & Electric Co. v. State, 190 S.W.2d 132 (Tex. Civ. App. 1945), affirmed 145 Tex. 24, 193 S.W.2d 675 (1946).

But assuming that this is not the proper construction to be given this last provision and further assuming that the arrangement of axles in the above example results in more than one group of axles,[6] then obviously the two paragraphs are in conflict and we must therefore determine which of the two provisions should prevail. If the provision which deals with "group of axles" is to prevail, then undoubtedly the rule announced by the Iowa Supreme Court in State v. Balsley, supra, should be applied. On the other hand, if the provision of the act relating to permissible weights for "vehicles" and "combination of vehicles" is controlling, then the total permissible gross weight for the vehicle or combination of vehicles would be determined by the figure set out in the table corresponding to the distance from the extreme front axle to the extreme rear axle without regard to intervening axles.

In considering conflicting provisions in a statute, the primary object is to ascertain the legislative intent. In accordance with the principle that the last expression of the legislative will is the law, the prevailing view is that, in case of conflicting provisions in the same act, the last provision in order of arrangement prevails. United States v. Updike, 25 F.2d 746 (D. Neb. 1928), affirmed 281 U.S. 489 (1930); Great Northern Ry. v. United States, 155 Fed. 945 (C.C.A. 8th 1907), affirmed

---

6/ Such grouping of axles accords with the interpretation which the Highway Research Board has placed on that part of the act providing that "no group of axles shall carry a load in pounds in excess of the value given in the . . . table." See Bulletin No. 26, Highway Research Board, Washington, D.C., July 1950, p. 11. See also, "Policy Concerning Maximum Dimensions, Weights and Speeds of Motor Vehicles" adopted by American Association of State Highway Officials on April 1, 1946.

208 U.S. 452 (1908); State v. Burchfield Bros., 211 Ala. 30, 99 So. 198 (1924); Spreckels v. Graham, 194 Cal. 516, 228 Pac. 1040 (1924); Lamar v. Allen, 108 Ga. 158, 33 S.E. 958 (1899); Woodring v. McCaslin, 182 Ind. 134, 104 N.E. 759 (1914); People ex rel. Barnes v. Warden of Workhouse, 127 Misc. 224, 215 N.Y.S. 110 (1925); State v. Industrial Commission of Ohio, 105 Ohio St. 103, 136 N.E. 896 (1922); Packer v. Sunbury & E. Ry., 19 Pa. 211 (1852); 59 C.J. 999, Statutes, Sec. 596.

Texas has followed the above rule. Parshall v. State, 62 Tex. Crim. 177, 138 S.W. 759, 767 (1911); Stevens v. State, 70 Tex. Crim. 565, 159 S.W. 505 (1913). In the Stevens case, the court said:

"... Where there is [a] ... conflict between different sections or parts of the same statute, the last words stand ...; that is, the part of a statute later in position in the same act or section is deemed later in time and prevails over repugnant parts occurring before, though enacted and to take effect at the same time. ..."

Applying the above rules of construction to the question under consideration, it follows that controlling effect must be given to the provisions of the act wherein it is provided that the weights set forth in the table "shall constitute the maximum permissible gross weight for any such vehicle or combination of such vehicles."

It follows from the above that the distance to be measured in order properly to apply the statutory table in our example is from the extreme front axle (Axle "A") to the rear semi-trailer tandem axle (Axle "D"). This construction accords with the declared legislative intent to raise the permissible gross weight of commercial motor vehicles or combinations thereof, including the load thereon, from 48,000 pounds[7] to 58,420 pounds.[8] To hold otherwise would in many instances actually thwart such legislative intent.

Moreover, the construction we have placed on the act is in accord with the departmental interpretation placed thereon by the Texas Highway Department.[9]

---

7/ Acts 49th Leg., 1945, ch. 162, p. 218.
8/ See the title and Section 2 of Senate Bill 57, Acts 52nd Leg., 1951, ch. 146, p. 248.
9/ The instructions for registration purposes issued by the Texas Highway Department, Motor Vehicle Division, interpret the "distance in feet between the extremes of any group of axles" to mean from the extreme front axle of the vehicle to the extreme rear axle of the vehicle or combination.

What we have said above with reference to the maximum permissible gross weight of a vehicle or combination of vehicles under the statutory table of weights and distances is subject to certain specific restrictions and limitations contained in the act. In the first place, it is expressly provided that "no axle shall carry a load in excess of eighteen thousand (18,000) pounds." Secondly, no vehicle using high-pressure tires shall have a greater weight "than six hundred (600) pounds per inch width of tire upon any wheel concentrated upon the surface of the highway," and no vehicle using low-pressure tires shall have a greater weight "than six hundred and fifty (650) pounds per inch width of tire upon any wheel concentrated upon the surface of the highway." Thirdly, no wheel shall carry a load in excess of eight thousand (8,000) pounds on high-pressure tires and nine thousand (9,000) pounds on low-pressure tires. Fourthly, "the total gross weight concentrated on the highway surface from any tandem axle group shall not exceed thirty-two thousand (32,000) pounds." A tandem axle group is defined "to be two or more axles spaced forty (40) inches or more apart from center to center having at least one common point of weight suspension."

From the above we answer your first question as follows: In measuring the distance between the "extremes of any group of axles" in order to apply the statutory table of weights it is proper to measure from the extreme front axle of the vehicle to the extreme rear axle of the vehicle or combination of vehicles without regard to the number of axles that might intervene between such front and rear axle. Thus, a combination of vehicles consisting of a truck-tractor and tandem axle semi-trailer wherein it is thirty-seven (37) feet from the front truck axle (Axle "A") to the extreme rear axle of the tandem axle group (Axle "D") is permitted to have a maximum gross weight of 58,420 pounds, subject to the limitations and restrictions provided for in the act with respect to high and low pressure tires, single axle loads, wheel loads, and tandem axle loads.

By your second question you inquire as to the maximum weight allowance for two semi-trailer axles spaced four feet apart with no common point of weight suspension. As the two axles do not have a common point of weight suspension, they cannot come within the definition of a tandem axle group. Such axles are separate and apart one from the other, and therefore come within that provision of the act wherein it is provided that "no axle shall carry a load in excess of eighteen thousand (18,000) pounds." You are therefore advised that each such semi-trailer axle may carry a load not to exceed eighteen thousand (18,000) pounds, subject to the limitations and restrictions with respect to low pressure tires and wheel loads.

In your third question you present for determination the maximum gross weight allowed for a tandem truck used to transport ready mixed concrete wherein the distance between the extreme axles is twelve (12) feet. We assume that the type of truck inquired about is used exclusively to transport ready-mix concrete.

Under the statutory table of distances and weights the maximum permissible gross weight for any type of motor vehicle operated over the public highways outside the corporate limits of any incorporated city or town wherein it is twelve (12) feet between the extremes of its axles is 36,470 pounds. It is true that the act provides that "vehicles used exclusively to transport ready-mix cement for the next two (2) years after the effective date[10] of this act may be operated with a tandem axle load of thirty-six thousand (36,000) pounds" if the owner complies with certain conditions.[11] This is an exception to the 32,000 pound limit on other tandem axle groups. It in no way extends the maximum permissible gross weight allowed a vehicle under the table of distances and weights. All the proviso does is to allow an increase in the permissible weight on the tandem axle group of a vehicle used exclusively to transport ready-mix concrete, and it does not qualify or otherwise change the weights set out in the statutory table.

Your fourth question relates to the use of a "jeep assembly" in connection with an ordinary truck-tractor. As explained by you, a "jeep assembly" is a piece of equipment consisting of an axle, dual tires, and frame assembly which is connected to the truck-tractor by the use of a king pin attached to the "fifth wheel." Thus connected, it has the effect of making a tandem truck-tractor out of what was previously a single rear axle truck-tractor. We assume from the description that when the "jeep assembly" is connected to the fifth wheel of the truck-tractor that it results in the two axles being spaced forty (40) inches or more apart from center to center, and is so connected as to give at least "one common point of weight suspension." Based upon this assumption, the use of the jeep assembly results in forming a "tandem axle group," and by the express provisions of the act the total gross weight concentrated on the highway surface from "any tandem axle group" shall not exceed thirty-two thousand (32,000) pounds.

---

10/ Senate Bill 57, Acts 52nd Leg., 1951, ch. 146, p. 248, became effective September 7, 1951.

11/ The owner of such vehicle must first file with the State Highway Department a surety bond in the sum of $10,000.00 for each vehicle operated.

## SUMMARY

Under S.B. 57, Acts 52nd Leg., 1951, ch. 146, p. 248 (Art. 827a, Sec. 5, V.P.C.), the distance to be measured in applying the table of distances and weights in order to arrive at the maximum permissible gross weight of a vehicle or combination of vehicles is from the extreme front axle of the vehicle to the extreme rear axle of the vehicle or combination without regard to intervening axles. The maximum permissible gross weight allowed under the table of weights is subject to the restrictions contained in the act with respect to single axle loads, tandem axle loads, single wheel loads, and loads transmitted to the highway surface through use of high and low pressure tires.

The provision allowing a tandem axle load of 36,000 pounds for vehicles used exclusively to transport ready-mix concrete for two years after the effective date of Senate Bill 57 merely increases from 32,000 pounds to 36,000 pounds the permissible tandem axle load for such vehicles, but does not qualify or otherwise change the maximum gross weight prescribed for these vehicles in the statutory table.

The total gross weight authorized to be concentrated on the highway surface by any one tandem axle group formed by the use of a "jeep assembly" is 32,000 pounds.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

Everett Hutchinson
Executive Assistant

Price Daniel
Attorney General

By Charles D. Mathews
Charles D. Mathews
First Assistant

CDM:b